UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES EDWARD TAYLOR,

     Petitioner,

                                    Case No. 09-10556

v.

                                    Honorable Patrick J. Duggan

BLAINE LAFLER,

     Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

     Charles Edward Taylor, ("Petitioner"), a state prisoner currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his Wayne County Circuit court convictions for nine counts of first-degree criminal sexual conduct, Michigan Compiled Laws § 750.520b(1)(a), two counts of second-degree criminal sexual conduct, Michigan Compiled Laws § 750.520c(1)(a), and two counts of third-degree criminal sexual conduct, Michigan Compiled Laws § 750.520d(1)(a). For the reasons stated below, the application for writ of habeas corpus is denied.

### I. Factual and Procedural Background

     The Court recites verbatim the facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1):

1

Defendant, age thirty-two at the time of his 2004 trial, was convicted of sexually abusing FT, age seventeen at the time of trial, TT, age fifteen at the time of trial, and TH, age twelve at the time of trial. FT is defendant's former girlfriend's cousin, TH is defendant's former girlfriend's daughter, and TT is defendant's niece. The charged incidents occurred between 1999 and 2003.

Sandra Alexander, FT's mother, testified that, at some unspecified time, defendant moved into her home with his girlfriend, Natasha Hart, and Hart's daughter, TH.[1] At the time, FT and several other family members also lived in the home. According to FT, defendant had sexual intercourse with her twice. In December 2000, when FT was thirteen years old, she was awakened at approximately 3:00 a.m. by defendant's hands in her underwear. Defendant then climbed on top of her, put his hand over her mouth, put his penis in her vagina, and ejaculated inside her. Afterward, defendant told her that she "better not tell nobody." During the second incident, which occurred in January 2001, FT was sleeping on the floor when defendant kicked her and directed her to remove her pajama pants. When FT refused, defendant removed her clothing, had sexual intercourse with her, and ejaculated inside her. FT was subsequently treated for a venereal disease ("VD"). FT testified that she had a child in October 2001, and that defendant was the only person with whom she ever had sexual intercourse. In a statement made to the police, defendant admitted that he fathered FT's child. Deoxyribonucleic acid (DNA) testing confirmed that defendant is the biological father of FT's child.

Hart testified that, at some point, she, defendant, and TH moved from FT's mother's residence. TH, who referred to defendant as "dad," testified that after moving from FT's house, defendant sexually abused her on numerous occasions. According to TH, when she was eleven years old, defendant had sexual intercourse with her. TH indicated that on other occasions defendant penetrated her digitally, touched and sucked her breasts, and made her suck his nipple. She indicated that defendant would "get mad at [her]" when she told him to stop and threatened to hurt her or her mother if she told anyone. Eventually, defendant left the house after having a physical altercation with Hart.

_____

[1] Aside from Hart's daughter, TH, who is from a previous relationship, Hart has three children with defendant.

Defendant subsequently moved into his mother's house.  At the time, TT, who is the daughter of defendant's deceased brother, also lived in the home.  TT testified that, when she was about twelve years old, defendant woke her during the night, touched her all over, climbed on top of her, and penetrated her vagina with his penis.  Afterward, defendant threatened to kill her if she told anyone.  TT indicated that defendant penetrated her vagina with his penis four additional times, and penetrated her anus with his penis once.  In late 2003, TT visited an aunt in Indiana, where she was diagnosed with a venereal disease.  When she returned to her grandmother's house approximately eight months later, defendant had moved out; however, TT testified that defendant would occasionally spend the night and sexually abused her when he did.  TT contracted a second venereal disease.  TT testified that defendant was the only person with whom she had sexual relations.

*People v. Taylor*, No. 254888, 2005 Mich. App. LEXIS 1190, *2-5 (Mich. Ct. App. May 12, 2005) (per curiam).

Based on this evidence, a jury found Petitioner guilty of nine counts of first-degree criminal sexual conduct, two counts of second-degree criminal sexual conduct, and two counts of third-degree criminal sexual conduct.  He was sentenced to concurrent thirty-to-sixty year terms for the first-degree convictions and concurrent ten-to-fifteen year terms for the second and third-degree convictions.

Petitioner pursued an appeal of right in the Michigan Court of Appeals.  His appellate brief raised three claims:

I. The trial court's joinder for trial of the three separate cases was an abuse of discretion which denied Mr. Taylor of a fair trial.

II. Mr. Taylor was denied his state and federal constitutional rights to due process of law and a fair trial through misconduct of the prosecutor, which consisted of mischaracterization of the evidence, improper character argument, appeal to the emotions of the jurors, and unsupported speculation.

3

> III.  The trial court denied Mr. Taylor a fair trial by giving a confusing, incomplete, and erroneous reasonable doubt instruction.

The Michigan Court of Appeals affirmed in an unpublished opinion.  Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same three issues and an additional claim that Petitioner was actually innocent of the charges relating to TT.  The Michigan Supreme Court denied leave to appeal.  *People v. Taylor*, 474 Mich. 909, 705 N.W.2d 132 (Mich. 2005) (table).

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised four issues:

> I.  The trial court unconstitutionally applied Michigan's rape shield law in refusing to allow the defense to present evidence that the complainant had made previous allegations of sexual assault against two different persons in order to show the source or origin of disease.
>
> II.  The prosecutor violated defendant's state and federal due process rights by engaging in misconduct during closing arguments by denigrating Mr. Taylor and directly appealing for juror sympathy.  If trial counsel waived the error by failing to object, they deprived defendant of effective assistance.
>
> III.  Defense counsel failed to file a pre-trial motion for an in camera hearing, failed to present expert testimony which would have aided the jury, failed to investigate or present defense witnesses, and failed to strike a juror for cause; defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing.
>
> IV.  Defendant Taylor was denied his constitutional right to a fair trial due to the cumulative effect of the prejudicial errors which occurred before, and during, his trial.

The trial court denied the motion, finding that because two of these claims had been raised during Petitioner's appeal of right, they were barred by Michigan Court Rule

4

6.508(D)(2).  The court found that Petitioner's remaining claims were barred by Rule 6.508(D)(3), which required him to demonstrate good cause for failure to raise his claims on appeal and actual prejudice resulting from the alleged errors.

Petitioner appealed this decision to the Michigan Court of Appeals, asserting that the trial court erred in failing to reach the merits of his claims.  The application for leave to appeal was denied "for failure to demonstrate entitlement to relief under Rule 6.508(D)."  *People v. Taylor*, No. 286184, 2008 Mich. App. LEXIS 2656 (Mich. Ct. App. Nov. 14, 2008).  Petitioner appealed to the Michigan Supreme Court, but his application for leave to appeal was denied with citation to the same court rule.  *People v. Taylor*, 484 Mich. 866, 769 N.W.2d 657 (Mich. 2009) (table).

Petitioner attempted to file a second motion for relief from judgment in the trial court on or about March 24, 2008, while his appeal from his first motion was still pending in the Michigan Court of Appeals.  This second motion asserted that Petitioner's trial counsel was ineffective for failing to discover medical records that showed that Petitioner was not treated at a hospital for the same venereal disease acquired by two of the complainants.  The trial court denied the motion under Michigan Court Rule 6.502(G)(1), which generally prevents a defendant from filing a second motion for relief from judgment.  Petitioner did not attempt to appeal this decision to the state appellate courts.

Petitioner now seeks a writ of habeas corpus on the following grounds:

I.  The trial court's joinder for trial of the three separate cases was an abuse of discretion which denied Mr. Taylor of a fair trial.

5

II.  Mr. Taylor was denied his state and federal constitutional rights to due process of law and a fair trial through misconduct of the prosecutor, which consisted of mischaracterization of the evidence, improper character argument, appeal to the emotions of the jurors, and unsupported speculation.

III.  The trial court denied Mr. Taylor a fair trial by giving a confusing, incomplete, and erroneous reasonable doubt instruction.

IV.  The trial court unconstitutionally applied Michigan's rape shield law in refusing to allow the defense to present evidence that the complainant had made previous allegations of sexual assault against two different persons in order to show the source or origin of disease.

V.  The prosecutor violated defendant's state and federal due process rights by engaging in misconduct during closing arguments by denigrating Mr. Taylor and directly appealing for juror sympathy. If trial counsel waived the error by failing to object, they deprived defendant of effective assistance.

VI.  Defense counsel failed to file a pre-trial motion for an in camera hearing, failed to present expert testimony which would have aided the jury, failed to investigate or present defense witnesses, and failed to strike a juror for cause; defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing.

VII.  Defendant was denied his constitutional right to a fair trial due to the cumulative effect of the prejudicial errors which occurred before, and during, his trial.

VIII.  Defendant was denied his Sixth Amendment right to effective assistance of counsel applicable to the state of Michigan under the Due Process Clause of the Fourteenth Amendment of the United States Constitution when counsel failed to secure the medical records to disprove the introduction of the prosecutor's evidence consisting of a hospital bill to contend the defendant was treated for a sexually transmitted disease which tied defendant to the victims.

## II. Standard of Review

To obtain habeas corpus relief, a state prisoner must show that the state court

6

decision rejecting his habeas claims "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S. Ct. at 1523. A court may not issue the writ "simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S. Ct. at 1522.

### III. Discussion

**A. Joinder of Cases for Trial**

Petitioner first claims that the joinder of the three complainants' cases for a single trial was fundamentally unfair, in violation of his due process rights. Respondent argues that Petitioner raised this claim only on state-law grounds during his appeal of right, and that the federal aspect of the claim is therefore procedurally barred. The Court need not

7

address the issue of procedural default because the claim is plainly without merit. *See*

*Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997) (procedural

default is ordinarily addressed first, but resolution on the merits is permitted where the

issue is easily resolved).

"Improper joinder does not, by itself, violate the constitution. Rather, misjoinder

would rise to the level of a constitutional violation only if it results in prejudice so great

as to deny a defendant his . . . right to a fair trial." *United States v. Lane*, 474 U.S. 438,

446, n.8, 106 S. Ct. 725, 730 n.8 (1986). The issue "is not whether the failure to sever

counts for separate trials was a violation of a state rule of procedure, but whether the

failure to sever denied the petitioner due process of law under the Fourteenth

Amendment." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007). To establish prejudice

from joinder, a defendant must point to specific evidence that the joinder was prejudicial.

*United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005). "[A]n unproven assertion is

not compelling evidence of actual prejudice." *Id.* at 679. "[A] jury is presumed capable

of considering each criminal count separately, and any prejudice may be cured by limiting

instructions." *United States v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002) (internal citations

omitted).

It was not fundamentally unfair to join the three criminal cases against Petitioner

in a single trial. As the Michigan Court of Appeals noted, if the cases were tried

separately, the evidence concerning each victim would have been admissible at each trial

under Michigan Rule of Evidence 404(b) as evidence of a common plan or scheme.

8

*Taylor*, 2005 Mich. App. LEXIS 1190, at *8. The mutually corroborating testimony by the complainants, which Petitioner claims was an unfair result of the joinder, would have occurred at separate trials as well. Petitioner was not prejudiced by having a single jury hear all the sex charges against him, as the full breadth of the charges would have been heard by each jury even if the cases had been tried separately. *See United States v. Jacobs*, 244 F.3d 503, 507 (6th Cir. 2001); *Krist v. Foltz*, 804 F.2d 944, 947-48 (6th Cir. 1986). Nor can this Court question the state appellate court's determination that the evidence of each sexual assault would have been admissible in separate trials. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (holding that errors in admission of evidence under state law are usually not cognizable in a § 2254 proceeding). Petitioner's first claim is therefore without merit.

## B. Prosecutorial Misconduct

Petitioner asserts in his second claim that the prosecutor committed various acts of misconduct that rendered his trial unfair. He asserts that the prosecutor: (1) argued facts that were not in evidence; (2) vouched for the credibility of her witnesses; (3) denigrated Petitioner; and (4) urged the jury to speculate that Petitioner had venereal disease. Respondent asserts that the claim is barred by Petitioner's failure to object to the alleged misconduct at trial, but that issue need not be addressed because the claim lacks merit. Petitioner's fifth claim repeats some of these allegations, and further asserts that the prosecutor appealed to the jury's sympathies for the victim during closing argument.

Prosecutors must "refrain from improper methods calculated to produce a

9

wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982)) (omission in original). On habeas review, the court must determine "whether the conduct was 'so egregious as to render the entire trial fundamentally unfair.'" *Id.* (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)). The court must initially decide whether the challenged statements were improper. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). If the statements were improper, the district court must then examine whether the statements or remarks were so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.* Consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury; and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra,* 4 F.3d at 1355-56.

In addition, because this case is a habeas case and not a direct appeal, the inquiry into an issue of prosecutorial misconduct is less stringent. *See Spalla v. Foltz*, 615 F. Supp. 224, 227 (E.D. Mich. 1985). "[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is

10

necessarily imprecise.'"  *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting

*Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S. Ct. 1868, 1872 (1974)) (alteration in

original).  In deciding whether prosecutorial misconduct mandates that habeas relief be

granted, a federal court must apply the harmless error standard.  *Pritchett v. Pitcher*, 117

F.3d 959, 964 (6th Cir. 1997).

The Michigan Court of Appeals rejected Petitioner's prosecutorial misconduct

claim as follows:

> Next, defendant contends that he was denied a fair trial by numerous
> instances of prosecutorial misconduct.  We disagree.
>
> Because defendant failed to object to the prosecutor's conduct
> below, this Court reviews his unpreserved claims for plain error affecting
> substantial rights.  *People v. Carines*, 460 Mich. 750, 752-753, 763-764;
> 597 N.W.2d 130 (1999).  We will not find error requiring reversal if the
> prejudicial effect of the prosecutor's comments could have been cured by a
> timely instruction.  *People v. Watson*, 245 Mich. App. 572, 586; 629
> N.W.2d 411 (2001).
>
> A. Facts Not in Evidence
>
> Defendant contends that the prosecutor argued facts not in evidence
> by stating that TT's aunt learned of the sexual abuse while TT was in
> Indiana, and that there was "no evidence" that TH's mother and defendant
> "had any problem getting along."  The prosecutor concedes that there was
> essentially no evidence presented to support these statements.[2]
>
> Although the prosecutor improperly argued facts that were not
> supported by the evidence, *People v. Stanaway*, 446 Mich. 643, 686; 521
> N.W.2d 557 (1994), defendant has not demonstrated that his substantial

---

[2] But in fact, there was evidence that TH's mother and defendant had a physical
altercation in 2003.  In addition, TT's aunt testified that, while in Indiana, TT was
diagnosed with a venereal disease but, upon questioning, TT "was very evasive."

rights were affected.  *Carines, supra*.  The remarks involved only a brief portion of the prosecutor's closing and rebuttal arguments, were of comparatively minor importance considering the totality of the evidence against defendant, and were not so inflammatory that defendant was prejudiced.  Moreover, the trial court instructed the jurors what constituted evidence, and that the case should be decided on the basis of the evidence.  The instructions were sufficient to dispel any possible prejudice.  *People v. Long*, 246 Mich. App. 582, 588; 633 N.W.2d 843 (2001).  Juries are presumed to follow their instructions.  *People v. Graves*, 458 Mich. 476, 486; 581 N.W.2d 229 (1998).  Consequently, reversal is not warranted on the basis of this unpreserved issue.

Defendant also contends that the prosecutor argued facts not in evidence when she "held up" and referred to a "Kids' Talk" interview tape that was not admitted into evidence.  Although the actual videotape was not admitted at trial, its existence was part of the evidence and references to the videotape were made throughout trial.  TH, her mother, and a Sex Crimes Unit police officer testified that because of her young age, TH was interviewed by Kids' Talk, and the interview was videotaped.  The officer testified that the videotape that the prosecutor "held up" was the actual Kids' Talk videotape containing TH's interview.  This claim is without merit.

B. Vouching

We also reject defendant's claim that the prosecutor impermissibly vouched for TH by referring to the Kids' Talk interview tape.  A prosecutor may not vouch for the credibility of a witness by conveying that she has some special knowledge that the witness is testifying truthfully.  *People v. Knapp*, 244 Mich. App. 361, 382; 624 N.W.2d 227 (2001).  But viewed in context, the prosecutor did not convey to the jury that she had special knowledge that TH was testifying truthfully.  Rather, when referring to the videotape, the prosecutor was in the midst of urging the jurors to evaluate the evidence and to consider that the victims were consistent about the basic details of the incidents during the numerous times and places they told their stories.  A prosecutor is free to argue the evidence and all reasonable inferences arising from it as they relate to her theory of the case.  *People v. Bahoda*, 448 Mich. 261, 282; 531 N.W.2d 659 (1995).  The prosecutor's remarks were not improper.

C. Denigration of Defendant

12

We also reject defendant's claim that the prosecutor impermissibly denigrated his character during closing argument when she stated that defendant "has a sexual interest in children." Although a prosecutor "must refrain from denigrating a defendant with intemperate and prejudicial remarks," *id*. at 283, the challenged remark here simply conveyed the prosecutor's contention that the evidence demonstrated defendant "has a sexual interest in children." In view of the evidence, her argument was reasonable. A prosecutor is not required to phrase arguments and inferences in the blandest possible terms. *People v. Ullah*, 216 Mich. App. 669, 678; 550 N.W.2d 568 (1996). Thus, the prosecutor's remark was not improper.

D. Improper Argument

Defendant also makes a general claim that during rebuttal argument, the prosecutor made several remarks that improperly urged the jury to "speculate" that he had a venereal disease. But viewed in context, the challenged argument was plainly focused on refuting both defense attorneys' assertions made during closing arguments that there was no evidence that defendant had a venereal disease. The defense attorneys argued that defendant's girlfriend did not testify that he infected her with a venereal disease, that the police failed to administer a blood test to determine if defendant had a venereal disease, and that defendant's penicillin prescription could have been prescribed to treat diseases other than a venereal disease.

In response, the prosecutor argued that during their closing arguments, the defense attorneys assumed that a venereal disease could be detected with a blood test and that it would be virtually impossible to determine if or when defendant sought treatment and to obtain any corresponding medical records. She further argued that defendant's girlfriend was never asked whether defendant infected her with a venereal disease, but that "maybe" she did contract a venereal disease from defendant. Given the defense attorneys' remarks, the prosecutor's brief responsive remarks were not improper. Otherwise improper prosecutorial remarks might not require reversal if they address issues raised by defense counsel. *People v. Duncan*, 402 Mich. 1, 16; 260 N.W.2d 58 (1977). Consequently, this claim does not warrant reversal.

*Taylor*, 2005 Mich. App. LEXIS 1190, at *9-15.

13

This decision did not involve an unreasonable application of established Supreme Court standards. Petitioner first asserts that the prosecutor made statements during closing argument that were not supported by the evidence. The prosecutor stated that there was no evidence that the mother of one of the complainants did not get along with Petitioner, referred to a video tape that was not admitted into evidence, and said that another complainant's aunt learned about the abuse when the complainant was in another state. The Court agrees with the Michigan Court of Appeals that these arguments were not supported by any evidence presented at trial. However, in light of the substantial evidence against Petitioner detailed above, the prosecutor's brief references to these unsupported allegations did not have a substantial and injurious effect or influence in determining the jury's verdict. They were relatively minor parts of a much larger argument that properly focused the jury's attention on the evidence presented at trial. Therefore, petitioner is not entitled to habeas relief on this ground.

Petitioner next asserts that the prosecutor vouched for the credibility of the complainant TH. A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* "[G]enerally,

14

improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted). The prosecutor did not suggest that she had any secret knowledge that the complainant was testifying truthfully. Rather, she asked the jury to consider the consistency of TH's claims that Petitioner had sexually assaulted her as a reason for believing her testimony. There was no improper vouching.

Petitioner next asserts that the prosecutor denigrated him by stating that he has a sexual interest in children. It is inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel, *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996), but the prosecutor did not make a personal attack upon Petitioner. The evidence at trial showed that he sexually molested three different girls. The comment was supported by the evidence and was not designed to divert the jury's attention from the evidence. Nor did it urge conviction of Petitioner based on an improper consideration.

Petitioner also asserts that the prosecutor improperly suggested that he had venereal disease. The comment was proper. Two of the complainants testified that they contracted venereal disease after Petitioner had molested them and that they had no other sexual partners. The argument was therefore based on a fair inference made from this testimony, whether or not the prosecutor failed to provide direct evidence that Petitioner had such a disease.

Finally, Petitioner asserts that the prosecutor appealed to the sympathies of the jury

15

by saying that she was "sickened" by Petitioner's conduct and that he was "twisted."
While the prosecutor's comments may have approached the line, they did not cross it.
The thrust of the prosecutor's argument urged the jury to convict Petitioner based on the
evidence presented. While she did not always use the blandest of terms in doing so, the
prosecutor's argument was not so inflammatory so as to render Petitioner's trial unfair.
The Court concludes that Petitioner's claims of prosecutorial misconduct lack merit.

**C. Reasonable Doubt Jury Instruction**

Petitioner's third claim asserts that the jury instruction erroneously lowered the
prosecutor's burden of proof. The Michigan Court of Appeals found that the claim was
waived because Petitioner's defense attorneys specifically stated that they were satisfied
with the jury instructions. Even if this claim were not waived, it must be rejected because
it is without merit.

"The government must prove beyond a reasonable doubt every element of a
charged offense." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S. Ct. 1239, 1242 (1994) (citing
*In re Winship*, 397 U.S. 358, 90 S. Ct. 1068 (1970)). "[S]o long as the court instructs the
jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the
Constitution does not require that any particular form of words be used in advising the
jury of the government's burden of proof." *Id.* at 5, 114 S. Ct. at 1243 (internal citation
omitted). "Rather, 'taken as a whole, the instructions [must] correctly convey the concept
of reasonable doubt to the jury.'" *Id.* at 5, 114 S. Ct. at 1243 (quoting *Holland v. United
States*, 348 U.S. 121, 140, 75 S. Ct. 127, 138 (1954)) (alteration in original).

16

The trial court instructed the jury on the prosecutor's burden of proof as follows:

The burden of proof in a criminal case is on the People. They have to prove that there was a crime committed; and in this case 13; and that the crimes were committed by Mr. Taylor. On the other hand, there is no burden on the Defense to do anything in a criminal case except show up in court. They don't have to present any testimony, or do anything, whatsoever, other than come into court and pay attention. And the burden never shifts. It is always with the People.

Now, a person that's charged with an offense, as I told you, the minute they are charged they are presumed innocent. A charge is nothing but an accusation; that is not evidence. A person is presumed innocent. Presumption of innocence starts at the beginning of a trial, and goes through while you're deliberating. Presumption of innocence, however, is a rebuttal [sic] presumption. That means it will stand unless it's rebutted by evidence of the contrary. Evidence to convince you, beyond a reasonable doubt, that Mr. Taylor is not innocent, but that he is in fact guilty. Presumption of innocence could result in an acquittal by itself. However, if there is evidence presented to you to convince you beyond a reasonable doubt that he is not innocent, then the presumption of innocence is rebutted. But that is what is meant by presumption of innocence.

Now, the standard of proof, as I told you, is proof beyond a reasonable doubt. We're not dealing with a mere preponderance of the evidence; we are dealing with proof beyond a reasonable doubt. A reasonable doubt simply means a doubt for which you can assign a reason for having. It's reasonable, like you use the term reasonable at anytime. It's a fair, honest and reasonable doubt. The kind of a doubt that would make you hesitate before making an important decision.

Now, the People are not required to prove this case or any case beyond all doubt, because nothing can be proven beyond all doubt, unless you saw it yourself. A doubt has to be a reasonable doubt. A reasonable doubt is a fair and honest and reasonable doubt.

If you can say that you have an abiding conviction to a moral certainty, it is your duty to bring back a verdict of guilty. If you do not have an abiding conviction to a moral certainty, of course it is your duty to bring back a verdict of not guilty. A reasonable doubt is not a flimsy, or vain, fictitious, or imaginary doubt. It is not a hunch, or a feeling, or a

17

possibility of innocence.  It's a fair and reasonable doubt.

Trial Tr. vol. 3, 53-55, Mar. 15, 2004.

Petitioner has failed to show that the reasonable doubt instruction was improper or otherwise deprived him of a fundamentally fair trial.  There was no error in the court's definition of a reasonable doubt as a doubt to which you could assign a reason.  The instruction did not misstate the definition of "reasonable doubt" or shift the burden of proof to the defense.  In fact, the trial court specifically stated that Petitioner carried no burden at all, and that the prosecutor's burden never shifts.

Similarly, the trial court's use of the "moral certainty" language in the reasonable doubt instruction did not violate due process.  While the United States Supreme Court in *Cage v. Louisiana*, 498 U.S. 39, 41, 111 S. Ct. 328, 329-30 (1990), invalidated a jury instruction that defined reasonable doubt in terms of "grave uncertainty" and "actual substantial doubt" and required conviction based upon "moral certainty," the Court later limited that holding in *Victor*.  In *Victor*, the Court ruled that the mere use of the term "moral certainty" in a jury instruction defining reasonable doubt by itself does not violate due process, because it merely impresses upon the jury the need to reach a subjective state of near certainty of guilt.  *Victor*, 511 U.S. at 14-16, 114 S. Ct. at 1247-48.  The Court further found that use of the term "moral certainty" in the challenged instruction did not violate due process because the instruction provided that the jurors had to have an abiding conviction as to the defendant's guilt, equated moral certainty with doubt that would cause a reasonable person to hesitate to act, and told the jurors to consider the evidence

18

without indulging in speculation, conjectures, or unsupported inferences. *Id.* at 21-22, 114 S. Ct. at 1250-51. The Court distinguished the instruction in *Cage*, which failed to provide any explanation or meaning for the phrase "moral certainty." *Id.* at 21, 114 S. Ct. at 1250.

The Sixth Circuit has since held that the use of the term "moral certainty" does not automatically render a jury instruction on reasonable doubt fundamentally unfair. In *Austin v. Bell*, 126 F.3d 843 (6th Cir.1997), the Sixth Circuit ruled that a reasonable doubt instruction including the phrase "moral certainty" did not impermissibly lower the burden of proof because the instruction also provided that reasonable doubt was "an inability to let the mind rest easily" after considering the evidence. *Id.* at 847. The court concluded that the "moral certainty" language, considered in light of the entire instruction, did not create a reasonable likelihood that the jury impermissibly applied the jury instruction. *Id.*

This case is consistent with *Victor* and *Austin*. The trial court's reasonable doubt instruction conveyed the proper degree of certainty for conviction to the jury, referring to an "abiding conviction" of guilt and equating moral certainty with a fair, honest, and reasonable doubt. The trial court also explained that Petitioner was presumed innocent and that the burden of proof was on the prosecutor. Given such circumstances, Petitioner cannot establish that the reasonable doubt jury instruction impermissibly lowered the burden of proof or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

**D. Rape Shield Law**

Petitioner's fourth claim asserts that the trial court improperly used the rape shield law to prevent him from cross-examining one of the complainants about an allegation that she had been molested by her grandfather and uncle. Petitioner asserted at trial that this alleged sexual contact was relevant to show an alternate source for the complainant's venereal disease. The trial court prohibited this line of questioning because Petitioner had not provided adequate notice under the rape shield law and because there was no proffer of evidence that the prior assaults actually occurred. This claim was presented to the state courts in Petitioner's motion for relief from judgment and the appeal that followed. Respondent asserts that the claims are barred under Michigan Court Rule 6.508(D)(3), but the Court addresses them here because they plainly lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be confronted with the witnesses against him. This includes the right to conduct reasonable cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315-16, 94 S. Ct. 1105, 1110 (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 316, 94 S. Ct. at 1110. The right of cross-examination, however, is not without restriction. Trial judges "retain wide latitude" to limit cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986).

"Like most States, Michigan has a 'rape-shield' statute designed to protect victims

20

of rape from being exposed at trial to harassing or irrelevant questions concerning their

past sexual behavior." *Michigan v. Lucas*, 500 U.S. 145, 146, 111 S. Ct. 1743, 1745

(1991) (citing Michigan Compiled Laws § 750.520j). Michigan's statute provides:

> Evidence of specific instances of the victim's sexual conduct, opinion
> evidence of the victim's sexual conduct, and reputation evidence of the
> victim's sexual conduct shall not be admitted under sections 520b to 520g
> [the sexual conduct offense provisions] unless and only to the extent that
> the judge finds that the following proposed evidence is material to a fact at
> issue in the case and that its inflammatory or prejudicial nature does not
> outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor;
>
> (b) Evidence of specific instances of sexual activity showing the source or
> origin of semen, pregnancy, or disease.

Michigan Compiled Laws § 750.520j(1). The statute further provides that if a defendant

seeks to introduce such evidence, he must give notice of his intent to do so within ten

days of the arraignment. *See id.* § 750.520j(2).

The exclusion of evidence for failure to comply with a notice provision does not

violate the Confrontation Clause where the notice requirement supports legitimate state

interests and is not arbitrary or disproportionate to those interests. *Lucas*, 500 U.S. at

149-51, 111 S. Ct. at 1746-47. The Supreme Court has recognized that the state interests

addressed by the rape shield law are substantial, including the prevention of surprise and

harassment. *Id.* at 149-50, 111 S. Ct. at 1746-47. Exclusion of relevant evidence may be

justified where the state's interests in exclusion outweigh the defendant's interests in

having the evidence admitted. *Id.* at 153, 111 S. Ct. at 1748.

21

The trial court did not categorically exclude evidence of the complainant's alleged sexual encounter with her grandfather and uncle.  Rather, the trial court sustained the prosecutor's objection to the question posed by defense counsel to the complainant. Defense counsel did not proffer any evidence that the complainant had actually been molested by other family members, and the trial court found that Petitioner had not complied with the notice provisions set forth in Michigan Compiled Laws 750.520j.  As the prosecutor stated, if such notice had been given, a pretrial hearing could have been held to determine whether there was any basis to conclude that prior sexual encounters had indeed occurred.  Given Petitioner's failure to proffer any evidence to the trial court that TT had in fact been previously molested and the substantial interests underlying the rape shield law, it did not violate Petitioner's Sixth Amendment rights to prohibit cross-examination concerning the alleged molestation.  Petitioner is not entitled to habeas relief based on this claim.

**E. Ineffective Assistance of Counsel**

Petitioner's sixth and eighth claims assert that he was denied the effective assistance of counsel at trial.  Petitioner alleges that his two defense attorneys: (1) failed to file a pretrial motion for an *in camera* hearing regarding TT's alleged prior sexual contact; (2) failed to present expert witnesses regarding the transmission of venereal disease and paternity testing; (3) failed to call witnesses in his defense; (4) failed to move to strike a juror for cause; (5) failed to subject the prosecution's case to meaningful adversarial testing; and (6) failed to present evidence that Petitioner was treated at a

22

hospital for a throat infection and not venereal disease as suggested by the prosecutor.

To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two-prong test. First, he must show that counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). To make this showing, Petitioner must overcome a strong presumption that his counsel was effective. *Id.* at 689, 104 S. Ct. at 2065. "[A] court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). Second, Petitioner must show that his counsel's deficient performance prejudiced his defense. *Id.* at 692, 104 S. Ct. at 2067. He must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

Petitioner's claims are too speculative to provide a basis for granting habeas relief. Petitioner provides copies of records showing that he was treated in a hospital emergency room for pharyngitis in September of 2003, but he provides no affidavits or other documentation to support any of his other claims of ineffective assistance. "Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief." *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003). "Generally, a petition for habeas corpus

23

relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavit." *United States ex rel. Townsend v. Young*, 2001 U.S. Dist. LEXIS 11677, at *18 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)). To the extent Petitioner argues that he is entitled to an evidentiary hearing to develop his claims, the Sixth Circuit has stated that "'bald assertions and conclusory allegations do not provide sufficient ground to warrant . . . an evidentiary hearing.'" *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) (quoting *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991)). With respect to the medical records Petitioner does provide, they hardly prove that he did not transmit a venereal disease to two of the complainants. The records do not show that he did not have such a disease; they merely show that he was treated for a throat condition. And contrary to Petitioner's assertion, the prosecutor did not argue in closing that medical records indicate that Petitioner was treated for venereal disease. In the passages cited by Petitioner, the prosecutor spoke about the complainant's medical records, rather than Petitioner's.

Moreover, Petitioner's claims do not account for the devastating evidence that he fathered the child of one of the complainants when she was under sixteen years old and living in his household. Petitioner alleges that his counsel should have hired an expert witness to challenge the evidence of paternity, but he offers no reason to believe the testing was inaccurate. The paternity evidence together with the other testimony of the prosecutor's witnesses overwhelmingly proved the first-degree criminal conduct

24

convictions relating to this complainant, and it resulted in some of his controlling thirty-to-sixty year sentences.  A review of the record reveals that despite this overwhelming evidence of his guilt, Petitioner's two trial attorneys provided him with professionally competent representation.  Accordingly, Petitioner's ineffective assistance of counsel claims do not provide a basis for granting habeas relief.

## F. Cumulative Error

Petitioner contends that the cumulative effect of certain errors entitles him to a new trial.  This claim lacks merit because constitutional errors that would not individually support habeas relief cannot be cumulated to support habeas relief.  *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

## IV. Conclusion and Order

For the reasons stated above, the Court denies the petition for writ of habeas corpus.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254 Cases.  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003).  The Court does not believe that jurists of reason would debate the Court's resolution of Petitioner's claims or find

25

that he should receive encouragement to proceed further. The Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, and therefore declines to issue a certificate of appealability. The Court also concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous and cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED;**

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a Certificate of Appealability;

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** leave to appeal *in forma pauperis.*

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Date: March 20, 2012
Copies to:

Laura Moody, A.A.G.

Charles Taylor, #222685
Chippewa Correctional Facility
4269 W. M-80
Kincheloe, MI 49784

26